Shauck, O. J.,
By allegations of fact in the pleadings, and by propositions of law in numerous briefs and in oral arguments, we are favored with a full and clear presentation of the considerations affecting the validity of the contracts for the employment of tax inquisitors in Hamilton and Montgomery counties. Those considerations conducted the superior court of Cincinnati to the conclusion that the contracts are valid, and the circuit court of Montgomery county to the conclusion that they are void. It will not be practicable, perhaps it would not be profitable, to attend to all those considerations in detail. The points of inquiry may be reached by the observation that there appear to be no substantial doubts respecting the validity of the contracts except those which concern the constitutional validity of the statutes by which the contracts are supposed to be authorized. These statutes are given in full in the statement of the cases.
*414 From a comprehensive view of these statutes and' other statutes relating to the taxation of property, it appears to he true, as is urged against the validity of the contracts, that the legislative policy is to charge auditors and assessors with the duty of bringing all taxable property upon the duplicates, vesting them with ample power for that purpose, and providing for their liberal compensation for services so rendered to the public; and then by this particular legislation to offer inducements to remissness in the performance of those duties in order that there may be realized the extraordinary compensation of the inquisitors. This tendency of the acts of 1885 and 1888 is so obvious that it could hardly have escaped the attention of the legislature even before there had been opportunity to observe their practical operation. That it did not escape attention appears in the provisions of sections 13435 and 1343-2, proposing the possibility of criminal proceedings to check the cupidity excited. But the admission that the wisdom of this reliance has not been vindicated by prosecutions for such remissness will not justify the conclusion that any part of the legislation is void. It must have been solely in view of this aspect of the case that counsel for the inquisitors have so gravely admonished us that we must not, by annulling an act of the legislature, defeat the will of the people. These acts involve the exercise of no power that is not legislative, and, however unwise they may appear to be, they must be held valid, unless they are violative of some limitation which the people have imposed upon the exercise of that power. Constitutions not only locate the powers of government, but in important respects they peremptorily prescribe the modes of their exercise. *415 More than a century has passed since Marbury v. Madison, and it would not now he decorous to counsel to assume that they either urge or entertain the view that the will of the people is expressed in acts of legislation which are passed in disregard of limitations which the people have expressly imposed upon their representatives who exercise their legislative power.
In support of the judgment of the circuit court of Montgomery county it is urged that the acts of 1885 and 1888 are alike violative of the provision' of section 26 of article 2 of the constitution that “all laws of a general nature shall have a uniform operation throughout the state.” In support of the judgment of the superior court of Cincinnati it is said that the act of 1888 is reconcilable with that provision of the constitution and that it, without aid from the act of 1885, authorizes the contracts whose validity is drawn in question. That taxation as the subject of legislation is of a general nature is established by a uniform course of decisions, and it is practically admitted in the present cases. The act of 1885, by its terms, is operative in but four counties of the state including Hamilton, and the contention of counsel for the inquisitors is that because of its limited operation it was and is a nullity and not now to be taken into account in the consideration of existing legislation upon the subject. The precise question is, does the act of 1888 operate uniformly throughout the state? By the terms of the first section of the act (R. S., sec. 1343-1), leaving out of view the provisions of the last section (R. S., sec. 1343-4), the officers of any county when they have reason to believe that there has not been a full return of property for tax *416 ation are empowered to contract for the services of an inquisitor. But the operation of the act was not left to the comprehensive terms of its first section. By its fourth section the act of 1885 was brought before the minds of the legislators to be dealt with as an act relating to the same subject matter. How did they deal with it? Certainly not in the mode which would have been most .usual and natural if the later act was intended to be the sole law upon the subject, that is, by the express repeal of the former act which, if continued in force, would prevent the operation of the later act throughout the state. Not only did the legislature not expressly repeal the earlier act, but care was taken, and apt language was chosen, to prevent the application to it of the legal rules with respect to repeals by implication. Could we regard ourselves as really attempting . interpretation if we should conclude that the legislature intended to nullify the former act by providing that it should not in any manner be affected? The suggestion that the general assembly knew that the former act was void because of its limited operation, and that the words by which it was saved are, therefore, regarded as meaningless, is inadmissible, for it would be an imputation of ethical obliquity. It is both just and decorous to assume that in both enactments the members of the legislature regarded themselves as performing duties enjoined upon them by the constitution and by their oaths to support that instrument. If the meaning of the legislature is sought where it should always be sought, in the words which it employs, and if the subject is regarded with a steady vision, it will not appear otherwise than that the concurrent operation of both acts was intended.
*417 For the purpose of the present case at least it may be conceded that, since all acts relating to the same subject matter are to. be considered together, acts authorizing the employment of tax inquisitors do, according to their terms, operate throughout the state. But the requirement of the constitution is not merely of operation, but of uniform operation throughout the state. Regarding the differences in the conditions to official action and more especially the presence of the limitation upon the compensation of the inquisitors in one and the absence of such limitation from the other, it is obvious that the concurrent operation of these acts would not be uniform. There appears to be no reason to doubt that the provisions respecting compensation held a prominent place in the minds of “the people” who prompted this legislation. Counsel for the inquisitors naturally call State ex rel. v. Crites, 48 Ohio St., 143, to our attention. It is true that in that case the act of 1888 was, as against objections there considered, held to be constitutional, and it was treated as valid legislation for the purpose of the judgment in that ease. But the considerations which conduct us to the conclusion that the act is void do not appear to have been in the minds of the court in that case. • To regard a case as authority upon questions which are not considered tends to the expulsion of reason from the law. One attempting to reconcile this legislation with the constitutional requirement here considered would find nothing of support in the case cited. He would find much adverse doctrine in both earlier and more recent cases dependent upon the consideration and effect of these sections of the constitution. Moreover State v. Crites has not become a rule of property for the present case. *418 Since there is no law operating uniformly throughout the ' state authorizing contracts with tax inquisitors, there is none which operates anywhere.
In State ex rel. Wilson v. Lewis, the judgment of the superior court of Cincinnati is-

Reversed.

In Thomas v. State ex rel. Gilbert, the judgment of the circuit court of Montgomery county is

Affirmed.

Price, ■ Crew, Summers, Spear and Davis, JJ., concur. " ¡